The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner. The appealing party has not shown ground to reconsider the evidence; receive further evidence; rehear the parties or their representative; or amend the Opinion and Award
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The Employer-Employee relationship existed between the Plaintiff and the Defendant-Employer.
3. The Defendant-Employer is self-insured with Sedwick James of the Carolinas, Inc. as the servicing agent.
4. Plaintiff's average weekly wage was $236.00, which yields a compensation rate of $157.34 per week.
5. Plaintiff is alleging an occupational disease that occurred on or about September 1, 1995, resulting in problems to both hands and arms.
6. The Defendant-Employer has denied liability.
7. The issue to be determined by the Commission is whether Plaintiff in fact suffers from an occupational disease as alleged.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, Plaintiff was 61 years old. She began working for Defendant on 19 April 1988. Prior to employment with Defendant her medical history included arthritis, diabetes, high blood pressure, depression and laminectomy which was performed in the lower back.
2. Plaintiff first sought medical treatment for her shoulder on 20 January 1992. Treatment was provided by Dr. Kenneth Yaussy, her family doctor. At the time of this examination her primary complaint was right leg pain, rather than shoulder pain. There was no dermatomal distribution of her pain, and Dr. Yaussy diagnosed arthritis as well as other complaints.
3. Plaintiff returned to Dr. Yaussy on 20 April 1992 with complaints of right arm pain. There were continuing complaints of the right leg, but these had improved. Dr. Yaussy ordered an MRI of the cervical spine and an arthritis profile. The results of the MRI were negative.
4. Plaintiff returned to Dr. Yaussy on 26 June 1992 with complaints of shortness of breath. Dr. Yaussy diagnosed a hiatal hernia, and Plaintiff had a history of this condition. Plaintiff did not complain of arm and leg pain.
5. Plaintiff returned to Dr. Yaussy on 21 July 1992 and was diagnosed with depression. Plaintiff had a history of this condition. Plaintiff did not complain of arm or leg pain.
6. Plaintiff returned to Dr. Yaussy on 6 October 1992 and 6 February 1993 with complaints of sinusitis. On 9 April 1993 the Plaintiff returned to Dr. Yaussy with nonspecific complaints and was diagnosed with depression. A complete physical examination was performed on 1 February 1994. At this time Plaintiff reported taking Tylenol for arthritis pain, and Dr. Yaussy diagnosed chronic osteoarthritis. Also in February 1994 Plaintiff was diagnosed with diabetes.
7. Plaintiff returned to Dr. Yaussy on 10 March 1994 with complaints of low back pain, throbbing in her left leg, and pain across the right side of her back. This time she was taking Ibuprofen for "joint pains." X-rays were taken at this time, and there were degenerative changes of the spine.
8. Plaintiff returned to Dr. Yaussy on 29 March 1994 and 13 April 1994, and she did not report arm or leg pain. Dr. Yaussy recommended that Plaintiff reduce her consumption of Ibuprofen.
9. Plaintiff returned to Dr. Yaussy on 17 April 1994 with complaints of shoulder, knee and ankle pain; and she reported that these were long term problems. Dr. Yaussy diagnosed chronic arthritis, in addition to diagnosing hypertension and anxiety/depression.
10. Plaintiff returned to Dr. Yaussy on 27 September 1994 and 2 November 1994 with complaints not related to her arms of legs.
11. Plaintiff returned to Dr. Yaussy on 16 December 1994 and reported "weather aches and pains." She returned to Dr. Yaussy on 2 March 1995 with complaints of "dead legs." At the time of this examination Dr. Yaussy diagnosed "no recognized over use." By March 1995 Plaintiff had improved, and Dr. Yaussy was "confused" as to the source of her complaints.
12. Between March 1995 and July 1995 Plaintiff returned to Dr. Yaussy on several occasions with complaints primarily of high blood pressure, depression and diabetes. She made no complaints of problems with her arms or legs.
13. Plaintiff claimed an injury to her shoulders on 1 September 1994, which was a Friday. Plaintiff claimed that while processing a "rush order" her right arm began to hurt. These rush orders were filled between two and four times per week and were not an interruption of her regular work routine by unusual circumstances likely to result in unexpected consequences.
14. Plaintiff went to the emergency room on 3 September 1994. In the medical note the emergency room nurse wrote, "[plaintiff] states pulling her shirt on this a.m. — c/o [complaints of R [right] shoulder pain and R [right] arm pain." The doctor wrote his note that right shoulder pain had begun that morning, rather than two days before. He also wrote, "no injury, started when reached up." Plaintiff related the onset of her symptoms to a specific event which was not work related.
15. Plaintiff returned to Dr. Yaussy on 11 September 1994, about one week after her alleged injury. At this time Plaintiff again related her condition to a specific event which was not work related, in that she told Dr. Yaussy that her pain had started when she put on her shirt. At this examination Plaintiff did not complain of shoulder pain; but instead, she complained of pain in the right forearm. Dr. Yaussy found a full range of motion of the right shoulder. He expressed concern as to whether "gripping activity" at work could be the cause of her forearm problems.
16. Plaintiff was out of work Monday and Tuesday after the weekend. She returned to work on Wednesday and worked with a sling. Plaintiff brought a copy of the emergency room report to her supervisor. Plaintiff has been out of work since 7 September 1995.
17. Plaintiff returned to Dr. Yaussy on 22 September 1995. Plaintiff reported continued soreness and reported that she had not been able to play Nintendo the week before. Dr. Yaussy referred Plaintiff to an orthopaedic surgeon, Dr. Herbert J. Schulten.
18. The first examination by Dr. Schulten was on 5 October 1995. Plaintiff reported a "long time" history of pain and weakness in her right shoulder and reported "constantly lifting boards at work," which she was able to do "reasonably well" until she was preparing a rush order. Dr. Schulten excused Plaintiff from work for two weeks and recommended exercises.
19. Plaintiff returned to Dr. Schulten on 12 December 1995. She reported that injections had improved her condition for three to four weeks. At this time Plaintiff reported problems with both shoulders. This was the first report by Plaintiff of left shoulder problems, and Plaintiff had been out of work for three months. Dr. Schulten was concerned that Plaintiff may have a rotator cuff tear and he ordered an MRI.
20. In January 1996 EMG/nerve conduction studies were conducted, and the results were within normal limits. At an examination on 10 January 1996 impingement signs for both shoulders were negative. Dr. Schulten performed repeat injections. Plaintiff had been out of work for four months.
21. Plaintiff returned to Dr. Yaussy on 26 January 1996. Plaintiff reported that she had pain in both shoulders, that she could not play Nintendo and that she could not voluntarily lift her arms over her head. Plaintiff's physical condition in January 1996 was significantly worse than it had been in September 1995 when she went out of work, because the pain at this time was in both shoulders rather than only the right, and the range of motion of the shoulder was more limited than it had been at the examination in September 1995. Dr. Yaussy concluded that Plaintiff had bilateral shoulder pain which was "of undetermined etiology."
22. Dr. Schulten ordered an MRI of the right shoulder; and at the time of this procedure, there was a possibility of a right sided rotator cuff tear. However, Plaintiff returned to Dr. Schulten on 8 February 1996; and at this time, her primary complaint was left shoulder pain, rather than right shoulder pain. Plaintiff had been out of work for five months and had not reported left shoulder problems at the time she went out of work. Dr. Schulten gave Plaintiff an excuse to be out of work for six to twelve months.
23. Surgery was performed on the right shoulder on 1 March 1996. At the physical examination before the surgery, Plaintiff reported more pain in her left shoulder that in her right shoulder.
24. Surgery was performed to remove cataracts on 1 May 1996 and 10 July 1996.
25. Plaintiff's recovery from her shoulder surgeries was slow, and she continued to receive treatment for chronic anxiety and depression.
26. In August 1996 Dr. Schulten performed surgery on Plaintiff's left shoulder.
27. An independent medical evaluation was performed by Dr. Roy Majors on 13 September 1996. It was his opinion that the condition of her shoulders was degenerative, that the condition could have developed if Plaintiff was not employed, and that the condition could be aggravated in Plaintiff's job "required work or heavy lifting, pushing or pulling or working above the plane of the shoulder on a repetitious basis."
28 The primary duty of Plaintiff's job was to fold socks. On the folding table was a "folding board" which stuck up at a ninety degree angle from the folding table. Plaintiff would fold socks over the board, then pull a cardboard wrapper over the folded sock, then tag the sock with a tagging gun so that a small plastic hanger was attached to each pair of socks. This work was done on a table which was waist high. In this job, Plaintiff was not required to repetitively reach above her shoulder.
29. The condition of Plaintiff's left and right shoulder was not a disease which is characteristic of and peculiar to her employment with Defendant-Employer, and this employment did not place Plaintiff at an increased risk of contracting the conditions as found in her left and right shoulder, when compared to members of the general public not so employed.
* * * * * * * * * * *
Based on the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 1 September 1994 Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with Defendant-Employer. N.C. Gen. Stat. § 97-2 (6).
2. The rotator cuff tear and other conditions of Plaintiff's left and right shoulders were not occupational diseases. N.C. Gen. Stat. § 97-53 (13).
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Under the law, plaintiff's claim for additional compensation must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs.
 S/ _____________ JOHN A. HEDRICK DEPUTY COMMISSIONER
CONCURRING:
S/ _____________ LAURA K. MAVRETIC COMMISSIONER
S/ _____________ THERESA STEPHENSON DEPUTY COMMISSIONER
JAH